NORFOLK & W. RY. CO. v. HAUSER.

(Circuit Court of Appeals, Fourth Circuit. March 11, 1913. Rehearing Denied
June 11, 1913. Application for Writ of Certiorari Denied by Supreme
Court November 11, 1913.)

No. 1,136.

1. MASTER AND SERVANT (§ 265*)—INJURIES TO EMPLOYÉ—BURDEN OF PROOF.

In an action for damages for negligence, brought by an employé or
party as to whom the rule of res ipsa loquitur does not apply, the bur-
den is primarily on plaintiff to establish the negligence charged, which
cannot be inferred merely from the fact of injury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
877–908, 955; Dec. Dig. § 265.*]

2. TRIAL (§ 141*)—QUESTIONS OF LAW OR FACT—DIRECTION OF VERDICT.

It is the duty of the trial judge to direct a verdict at the close of the
evidence, whenever it is wholly undisputed or but a single inference can
be drawn therefrom by reasonable men, so that the court in the exercise
of a sound judicial discretion would be compelled to set aside a verdict
returned in opposition thereto.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 336; Dec. Dig.
§ 141.*]

3. NEGLIGENCE (§ 136*)—QUESTIONS OF LAW OR FACT—SUBMISSION OF CASE
TO JURY.

The test to be applied in determining whether it is the duty of the
court to submit a question of negligence to the jury is not how the pre-
ponderance of the testimony may be in the court's opinion, but whether
the evidence is sufficient to sustain an inference by the jury, since, if dif-
ferent inferences may fairly be drawn from the evidence by reasonable
men, the jury, and not the judge, should be permitted to draw that infer-
ence.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353;
Dec. Dig. § 136.*]

4. EVIDENCE (§ 595*)—WEIGHT—INFERENCES.

While a jury may not guess or conjecture as to possible explanations
to account for a result, when such conjecture or explanation is not
supported by any reasonable inference from the testimony in the case,
yet when the cause of the occurrence cannot be shown by positive testi-
mony, the jury may draw inferences from circumstances contemporaneous
with or surrounding the occurrence; the only question being whether
such circumstances afford any reasonable ground on which a jury in the
exercise of its functions can draw an inference.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2444, 2445;
Dec. Dig. § 595.*]

5. NEGLIGENCE (§ 136*)—TRIAL—QUESTION FOR COURT OR JURY.

An action for negligent injury is not to be lightly taken from the jury,
since ordinarily negligence is so far a question of fact as to be properly
submitted to and determined by the jury as the triers of the facts.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 277–353;
Dec. Dig. § 136.*]

6. TRIAL (§ 18*)—TRIAL JUDGE—DUTY.

A trial judge is primarily responsible for the just outcome of a trial.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 37, 42½; Dec.
Dig. § 18.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

7. APPEAL AND ERROR (§ 927*)—PEREMPTORY INSTRUCTION—DENIAL—REVIEW.
    Action of the trial judge in declining to give a peremptory instruction for a verdict one way or another will not be reversed on appeal, unless clearly improper.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2912, 2917, 3748, 3758, 4024; Dec. Dig. § 927.*]

8. MASTER AND SERVANT (§ 286*)—INJURY—EVIDENCE—QUESTION FOR JURY.
    In an action for death of an engineer, caused by the squeezing of his engine between another engine, much larger in size, in front and a loaded coal train in the rear, evidence *held* to authorize submission to the jury of the question of the railroad company's negligence in placing decedent's small engine in such position.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1050; Dec. Dig. § 286.*]
    Dayton, District Judge, dissenting.

In Error to the District Court of the United States for the Western District of North Carolina, at Greensboro; James E. Boyd, Judge.

Action by Cora E. Hauser, as administratrix of Robert A. Hauser, deceased, against the Norfolk & Western Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

J. C. Buxton, of Winston-Salem, N. C. (Watson, Buxton & Watson, of Winston-Salem, N. C., Theodore W. Reath and F. Markoe Rivinus, both of Philadelphia, Pa., on the brief), for plaintiff in error.

Lindsay Patterson and E. B. Jones, both of Winston-Salem, N. C. (Jones & Patterson, of Winston-Salem, N. C., on the brief), for defendant in error.

Before PRITCHARD, Circuit Judge, and DAYTON and SMITH, District Judges.

SMITH, District Judge. The defendant in error brought an action at law for damages against the plaintiff in error on the 14th of February, 1908, for injuries claimed to have been inflicted by the plaintiff in error's negligence on the 20th of March, 1907. The deceased, Robert A. Hauser, was employed as an engineer by the Norfolk & Western Railway Company. On the 23d day of March, 1907, he was employed to run an engine operating on a train of the railway company running from Portsmouth, Ohio, to Columbus, Ohio. The train as made up was what is called a double header; that is, it consisted of 37 loaded coal cars, and the motive power was furnished by two engines at the head of the train, of which the second engine from the head was being operated by the deceased, Robert A. Hauser. The train was made up and the place of the engine designated by a superior officer of Hauser. At or near Clifford, Ohio, the engineer of the front engine attempted to bring the train to a stop to avoid colliding with the rear of a train in front of him, and applied his air brakes, but according to his statement discovered that the air brakes failed to work, whereupon he reversed his engine, and did all in his power to stop the train. Thereupon the car in the rear of the second engine, being forced forward by the momentum of the train which was endeavored to be stopped, was thrust

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

forward upon the tender of the second engine, mounted upon the trucks and platform of this tender, drove the water tank on the tender loose from its fastenings, pushed it forward on and over the cab of the engine, and thereby inflicted such injuries upon the deceased that he died in consequence. The particular acts of negligence charged in the complaint against the defendant in this case were that the deceased was operating an engine which had no pilot, was much smaller in size than the front engine, was used only for the purposes of a yard or shifting engine, and was old and weak and dilapidated, and not in condition to stand the pressure of the weight of the loaded train upon a sudden stoppage; that it was negligence to place it between the front engine, which was larger and heavier, and the train of loaded cars; and that it was further negligence to place an engine unfitted to stand the squeeze or pressure between a heavy engine, reversed so as to come to a stop, and a train of heavily loaded coal cars, as the possibility of it happening that the train would come to a sudden stop might occur, and in such a case no engine should be placed in that position that could not stand the impact. In other words, the act of negligence alleged may be said to be that the placing between a larger and heavier engine, in good condition and a long train of loaded freight cars, of an engine tender too weak to stand the pressure or impact that might exist consequent upon attempted sudden stoppage of the train, was an act of negligence. The other acts of negligence alleged consist in the charge that it was negligence to place the smaller engine in the rear of a larger engine in running a double header under the circumstances of this case, and, next, that the railway company negligently used old, worn-out, and defective air brakes on the train, so that the train could not be controlled or quickly stopped.

The assignments of error claim that there was no evidence that the second engine, upon which the plaintiff's intestate was killed, was rotten or otherwise defective, nor any evidence that there was any defect in the air appliances; the testimony of the defendant being to the effect that the trouble about the brakes was that some one had turned an angle cock on the second car below the engine on which Hauser was running, so as to let the air out of the main line or pipe for the brakes for all of the cars of the train from that point to the end of the train, and make it impossible for the engineer to apply his brakes, except to the two engines and the first two cars of the train. The evidence as to the insufficient condition of the tender of the second engine to stand the shock of the impact or squeeze between the forward engine and the heavy train behind it was mainly opinion evidence from witnesses who assumed to be competent witnesses, skilled in their vocation, based upon inferences drawn from the occurrence and characteristic incidents of the accident. The testimony showed, as before stated, that when the impact came from the train of loaded cars behind the second engine, the first car of the train mounted upon the trucks and platform of the tender to the second engine, practically demolishing them and completely demolishing the water tank, tearing it from its fastenings, and thrusting it forward, over and on the cab of Hauser's engine, so as to inflict the injuries which caused his death. No dam-

age was done to the front engine and no damage seems to have been done to any of the cars of the train, except to the car which inflicted the injury and destruction to the tender, and which was not much damaged. The only part of the train which seemed to have been much hurt was the tender to this second engine. The wrecked engine and tender was carried away by the railroad company, and therefore the testimony as to its condition must be more or less based upon what can be inferred as results from what occurred, as it would appear to be a matter of impossibility for the defendant in error to prove by actual examination what was the condition of the wrecked engine and tender. That was in the possession of the railway company, and removed from the scene at the time of the accident. The trial judge thought the testimony concerning all the facts which occurred was sufficient to go to the jury, and to support an inference as to the defective condition of the engine and tender as there was testimony to the effect upon which the conclusion of the jury could rest that the wreck could not have resulted unless the engine and tender wrecked had been weak or defective.

The issues in the case for the jury under the pleadings, therefore, would appear to be reduced for the consideration of this court to this: Was the trial judge justified in leaving it to the jury to say, in the first place, whether or not it was negligence on the part of the railroad company to direct one of its employés, an engineer, to operate an engine with its tender in the position the one in question was placed, between a heavier and stronger engine in front and a heavily loaded train of coal cars behind, not sufficiently strong to stand the shock in case of a sudden stoppage as against the heavy engine in front coming to a stop as fast as the engineer can bring it (either by the use of his brakes or reversing his engine) and the impact of the heavily loaded train of cars behind? Should any engine, with human employés thereon, have been put by the company in that position, unless it was capable of standing that squeeze or impact, and if an engine or tender was put in that position, so that if the stop occurred, and it was incapable of standing that impact, was that negligence on the part of the railway company? In the next place, if such was negligence, then was the engine and tender upon which Hauser was required to work an insufficient engine to stand this impact? Unless these were questions to go to the jury, the presiding judge below erred in sending the case to the jury.

The plaintiff in error moved the court below for a peremptory instruction to the jury to find a verdict for the defendant, on the ground that there was no evidence which justified a submission to the jury on any theory which would support a verdict against the defendant. The error alleged practically depends upon what is the rule of law applicable in this court with regard to its supervision of the lower court's action in submitting to or withdrawing from the jury the determination of issues of fact in actions at law for personal damages for negligence. Is it incumbent upon the trial court, in a case in which, upon the consideration of the testimony as a whole, in the opinion of the trial judge a verdict would not be warranted for one side,

to withdraw the case from the jury by a peremptory instruction, and in such case is the trial judge to arrive at his conclusions upon a consideration of the whole testimony, weighing all the circumstances and the conflict and credibility of witnesses? And if this be the rule for the trial court, to what extent is the action of the trial judge in this regard one subject to review and correction by an appellate court in an action at law?

If the rule be as here queried, then it is evident there must be two trials of the facts in every law case: First, in the conclusion to be reached by the trial judge whether the testimony taken as a whole would justify a verdict and for whom. Accordingly as he determines this question he will give a peremptory instruction, a result that would lead perilously near to the conclusion that in an action at law the case should not be submitted to the jury at all, except to find such verdict as the trial judge would himself find. In such case it would follow that, as the action of the trial judge in coming to that conclusion must be construed as the determination of a question of law, his determination will be subject to correction by the appellate court as for the correction of an error of law, and the appellate court will be called upon in all common-law cases to examine into the whole testimony to ascertain if the conclusion arrived at by the lower court from this testimony was correct. It would entail upon the appellate court as strict an examination in this regard of the testimony in a law case as it is required to make in cases of equity or admiralty.

The principles to control in such cases as derived from the decisions of the Supreme Court appear to be as follows:

[1] 1. In cases of actions for damages for negligence brought by an employé or party (other than a passenger or in other cases where the rule res ipsa loquitur may apply) the burden of proof is primarily upon the plaintiff to establish the negligence charged, and it is not enough to show an accident and from that alone infer an injury. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 659, 21 Sup. Ct. 275, 45 L. Ed. 361; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453.

[2] 2. At the close of the testimony it is the duty of the trial judge to direct a verdict wherever: (1) The evidence is wholly undisputed; or (2) but one inference could be drawn from the evidence by reasonable men, so as that the court in the exercise of a sound judicial discretion would be compelled to set aside a verdict returned in opposition to it. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Marande v. Texas & Pac. Ry. Co., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487.

[3] 3. The test in the second class of cases is not how in the court's opinion the preponderance of the testimony may be, but whether it is adequate to go to the jury; that is, whether the evidence is sufficient upon which a jury might base an inference and if different inferences might fairly be drawn from the evidence by reasonable men, then the jury should be permitted to choose for themselves. Washington Gaslight Co. v. Lansden, 172 U. S. 534, 19 Sup. Ct. 296, 43 L. Ed. 543; Marande v. Texas & Pac. Ry. Co., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487.

[4] 4. The jury is not to guess or conjecture as to possible explanations to account for a result, when such conjecture or explanation is not supported by any reasonable inference from the testimony in the case; but, when the cause of the occurrence cannot be shown by positive testimony, the jury is entitled to draw inferences from the circumstances contemporaneous with or surrounding the occurrence, and the only question is whether they afford any reasonable ground upon which a jury in the exercise of its functions can draw an inference. Marande v. Texas & Pac. Ry. Co., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487; Waters-Pierce Oil Co. v. Deselms, 212 U. S. 159, 29 Sup. Ct. 270, 53 L. Ed. 453.

[5] 5. Cases are not lightly to be taken from the jury. Jurors are the recognized triers of questions of fact, and ordinarily negligence is so far a question of fact as to be properly submitted to and determined by them, and parties are entitled to be secured in the enjoyment of their constitutional right to trial by jury, when the case is one proper to be decided by them as one of fact, and not to be concluded as a matter of law by the court. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361; Marande v. Texas & Pac. Ry. Co., 184 U. S. 173, 22 Sup. Ct. 340, 46 L. Ed. 487.

[6] 6. The trial judge is primarily responsible for the just outcome of a trial. He is not a mere moderator of a town meeting, submitting questions to the jury for determination, nor simply ruling on the admissibility of testimony, but one who stands charged with full responsibility. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

[7] 7. The trial judge has the same opportunity that jurors have for seeing the witnesses, for noting all those matters in a trial not capable of record, and hence it is seldom an appellate court reverses the action of a trial court in declining to give a peremptory instruction for a verdict one way or another, and when in the deliberate opinion of the trial judge there is no excuse for a verdict save in favor of one party, and he so rules by instruction to that effect, an appellate court will pay large respect to his judgment. Patton v. Texas & Pac. Ry. Co., 179 U. S. 658, 21 Sup. Ct. 275, 45 L. Ed. 361.

From these decisions it would appear that the responsibility for determining whether the issue shall be submitted to the jury is largely devolved upon the trial judge. Where he declines to take the case from the jury and refuses a peremptory instruction, the appellate court will seldom interfere. The jury is the proper tribunal to determine a question of fact, and if the trial judge upon the testimony commits the case to the jury, the appellate court will seldom interfere. Where the trial judge grants a peremptory instruction for a verdict, the appellate court will more readily interfere, but even then, in considering the question, will pay large respect to the judgment of the trial judge.

[8] In the case under consideration the trial judge refused a peremptory instruction and sent the case to the jury. The testimony is conflicting. It involves the consideration to a large extent of the credibility of the witnesses. While there was no positive testimony of the defective condition of the small engine and its tender, yet from its age, its small size, the use to which it had been put, and the circumstances

of the destruction of the tender by an impact or squeeze which in the opinion of some of the witnesses a sound engine tender should have withstood, taken all together, form a basis for the inference by a reasonable man which would not be unreasonable that the tender of the small engine was not capable of resisting the strain to which it was subjected, and to which it might be reasonably inferred that an engine operated as it was would be subjected. So, also, the order by his superior officer to Hauser to place his engine in the train in that position at that time was an order he was called upon to obey, and yet, under the circumstances, might it not unreasonably have been inferred to have been negligence on the part of such superior officer and therefore of the company? The question of proximate cause also would properly be for the jury under the circumstances.

The evidence as to tampering with the angle cock by any intruder is very slight and inconclusive, and at the rate the company's engineer testified the train was moving, one to one and a half miles an hour, it would not necessarily appear that the partial obstruction of the brakes was any controlling proximate cause of the injury. These, however, are questions of fact this court is not called upon to decide. It appears that there was testimony sufficient in the case in the opinion of the trial judge to justify his refusing a peremptory instruction and in leaving the matter to the jury.

In view of the reluctance with which, under the decisions of the Supreme Court, an appellate court interferes with the actions of the trial court in remitting to the jury, the natural party to determine it, a question of fact on a charge of negligence, and finding no evidence of an abuse of this discretion, and there being testimony adequate to support the verdict, if to the testimony for the plaintiff there be given the benefit of every inference that could reasonably be drawn from it, this court sees no reason for finding error of law in the action of the trial court, and the judgment is accordingly affirmed.

DAYTON, District Judge (dissenting). I cannot concur. It seems to me that the proximate cause of this accident was not the weakness of the engine that intestate was driving, but the failure of the brakes to perform their functions at the time. There is no evidence that these brakes were defective, or that the defendant failed in its duty to properly inspect and keep them in repair. On the contrary, it is undisputed that at the last station passed, four miles in advance of the accident, the brakes were in good working order. Something occurred to render them ineffective while running these four miles between the two stations, something which the company by no ordinary care could foresee or avoid. If these brakes had operated, the train would have been under control, and the extraordinary climbing of the cars upon the tender of the engine under intestate's control would not have occurred. Whatever may be said about the character of this engine, it is certain that it had been sufficient to run under normal conditions with this train more than 30 miles of the journey, and that intestate, a man of mature age and experience as an engineer, had, so far as the evidence discloses, made no protest against its use, nor expressed any fear of driving it under the conditions existing. No one can tell whether a larger and

stronger engine would or would not have withstood the impact of these cars. It could be only matter of conjecture. Certain it is the law requires evidence, and not conjecture, to warrant a jury to find verdicts in cases like this; and, further, it does not require the master to furnish its employé with the best, but only reasonably safe, machinery to operate under normal, and not extraordinary and unforeseen, conditions. Who is to say how large and strong an engine and tender was necessary for use on this occasion? Who can tell whether or not a larger and stronger tender, attached to a larger and heavier engine, would have resisted the impact of these cars? The logical conclusion to be drawn from permitting this judgment to stand for the reasons given by the majority, it seems to me, is that a railroad company will not be warranted in the use on freight trains of any engines other than the largest, heaviest, and strongest known to mechanics.

In Jennings v. Davis, 187 Fed. 703, 109 C. C. A. 451, this court has held, as to "proximate cause," that while ordinarily a question for the jury, where the evidence is uncontroverted, and but one inference *should* be drawn, the question is one of law for the court. The manifest effect of this ruling is that the trial court must be responsible for the determination of what is the proximate cause of the injury. If but one inference should be drawn from the evidence as to it, the twelve men should not be permitted to exercise their judgment and draw another. This ruling should be either overruled or followed.